**IN THE COURT OF APPEALS OF IOWA**

No. 17-1297
Filed October 11, 2017

**IN THE INTEREST OF J.W.,**
**Minor Child,**

**C.W., Mother,**
     Appellant.
_____

Appeal from the Iowa District Court for Clarke County, Monty W. Franklin, District Associate Judge.


The mother appeals the juvenile court order terminating her parental rights to her child. **AFFIRMED.**


Jane Orlanes of Orlanes Law Office, PLC, Ankeny, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Marc A. Elcock of Elcock Law Firm, Osceola, guardian ad litem for minor child.


Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, Judge.**

**I. Background Facts and Proceedings.**

J.W., born in 2004, came to the attention of the Iowa Department of Human Services (DHS) in July 2014 following the mother's arrest for a domestic-violence incident between her and J.W.'s father. The mother remained in jail awaiting a bed in a residential treatment facility. The mother and father agreed that J.W. should be placed with the maternal grandparents.

The State filed a child-in-need-of-assistance (CINA) petition and on September 24, the matter came on for an uncontested hearing. Based on the mother's substance abuse and domestic-violence incidents in front of the child, the court adjudicated J.W. as CINA and placement remained with the maternal grandparents.

The court adopted the case permanency plan in an October 29 dispositional order wherein batterer's education; parenting education; family safety, risk, and permanency (FSRP) services; and drug testing were recommended. Temporary legal custody was placed with the maternal grandparents, and visitation was to be determined by DHS.

The mother initially complied with services and showed progress towards sobriety. Between October 2014 and May 2015, she attended twenty-four sessions of treatment and found regular employment. DHS recommended that J.W. return to the mother's care. Following the May 2015 review hearing, the court returned temporary legal custody of J.W to the mother and awarded visitation for the father.

On August 3, however, the mother was arrested and incarcerated for probation violations, including drinking, abusing prescription medication, failing to meet with her probation officer, failing to attend substance-abuse treatment, and failing to appear in court. DHS recommended placement with the father temporarily, but on August 4, the father unexpectedly died.[1] The maternal grandparents assumed care of J.W., and on August 6, the court modified placement of J.W. with the maternal grandparents.

On November 25, the mother entered an inpatient substance abuse treatment program. The program allowed J.W. to live with the mother during treatment, and the court modified J.W.'s placement giving custody to the mother so long as she continued the residential treatment program. DHS reports indicate J.W. and the mother thrived at the facility. J.W.'s grades improved at school, and the mother continued progress towards sobriety.

On August 19, 2016, the State received a letter from DHS stating FSRP workers were unable to locate the mother and J.W. FSRP workers attempted to contact the mother's place of employment but the employer reported the mother was no longer working there after an alcohol-related incident at work where staff reported the mother was "drunk and belligerent." It was also reported that the mother took J.W. in a cab to a friend's house. On the way, the mother passed out in the cab and J.W. thought the mother stopped breathing. Upon arrival at

---

[1] Based on an affidavit from DHS worker, Ferne Adams, J.W. was staying with the father at the time of the mother's arrest. DHS instructed the father to care for J.W. until the State could file a modification to place J.W. with the father. The father agreed to meet with the worker to develop a safety plan. However, the next day, J.W. awoke to his unresponsive father. J.W. attempted CPR, but he was unsuccessful. After J.W. called 911, the maternal grandmother was contacted to pick up J.W.

the friend's house, the mother did not have any money to pay the cab fare, and the friend refused to take in the mother because she was intoxicated. The police were called, and the mother was arrested for public intoxication. J.W. remained at the friend's house temporarily. The juvenile court then modified J.W.'s placement to family foster care under DHS supervision—the maternal grandmother indicated she would no longer support the mother by caring for J.W. The mother was eventually charged with public intoxication, third or subsequent offense. After a jury trial, she was convicted and sentenced to two years' incarceration. The sentence began on December 6, 2016.

In May 2017, the mother was paroled from prison. Her parole was conditioned on residing at a treatment facility. Visits between the mother and JW took place by phone approximately twice per week. According to DHS reports, on May 22, J.W. and his foster parent received a phone call from the mother; she was allegedly intoxicated. J.W. reported being so afraid that the mother was going to violate her parole conditions or even commit suicide that he missed the following day of school. DHS contacted the mother's parole officer regarding the phone call, and the officer reported the mother was missing from the residential treatment facility. The officer also reported that the mother had twice tested positive for benzodiazepines at the residential treatment facility and once for alcohol at a parole meeting. The mother failed to show up for her May 25 parole appointment. A warrant was issued for her arrest.

On May 27, the mother was arrested for public intoxication. She was released the same day after she pled guilty. On May 30, the mother was arrested again for theft. However, authorities transported the mother to a

hospital instead of jail due to her intoxicated condition. The mother was eventually taken into custody.[2]

A termination hearing was held on June 5. Ferne Adams, DHS social worker, testified about the mother's substance-abuse issues:

> Q. How long do you think it would take her, based on what you know about her issues, before she would be able to have J.W. in her care? Or can you not make that determination? A. I have the last three years to look at, and it's not positive. I mean, [the mother] has not been able to manage even thirty days left to her own supervision, if you will. There's nothing saying that she—well, so far we can't get past thirty days. I'll just say it that way. So there's no way.

J.W.'s guardian ad litem (GAL) discussed the mother's struggle with substance abuse leading up to the termination trial in the context of her contact with J.W.:

> I would disagree that there has been that significant and meaningful contact over the past six months. [The mother] was incarcerated for five months of that time. But, in addition, once she was out, the contact that she made, although it was a handful of times, including Mother's Day, I wouldn't say that was meaningful, as she typically would call him intoxicated and would further cause him harm, Your Honor. And then prior to her term in prison, her contact also, she was intoxicated, and J.W. would have to point that out to the department or his foster dad would have to point out it out to the department. So I would argue her contact, although she has made contact over the past year or so, it has not been meaningful as they have not been able to work on anything. She hasn't taken part in any services that has been offered, other than being incarcerated for the past six months. She was in [a treatment facility], but she walked away from that; and that was her one chance to try and show, as we were coming up to this termination hearing, that she wanted to do things better.

The GAL also stated that J.W. is doing very well in foster care and "[t]he only disruption he has with the current foster placement is when his mom calls and disrupts it."

---

[2] The disposition of the pending charges was unknown at the time of the mother's appeal.

On August 4, the juvenile court terminated the mother's parental rights pursuant to section 232.116(1)(b), (e), and (*l*) (2017).  The mother appealed.

**II. Standard of Review.**

We conduct a de novo review of proceedings terminating parental rights. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).  An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116.  *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).  Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of conclusions drawn from it.  *Id.* Although we are not bound by the factual determinations of the juvenile court, we do give weight to them, particularly regarding the credibility of witnesses.  *Id.* The primary consideration of our review is the best interests of the child.  *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

**III. Discussion.**

The mother argues one statutory ground for termination was not proven, termination is not in the best interests of the child, and termination should be precluded under the permissive factors.

*A. Statutory Requirements.*

When the juvenile court terminates parental rights under multiple code sections, we may affirm on any ground supported by clear and convincing evidence.  *D.W.*, 791 N.W.2d at 707.  The mother's parental rights were terminated under section 232.116(1)(b), (e), and (*l*).  The mother only challenges the statutory grounds for whether she deserted J.W., pursuant to subsection (b). She does not challenge the court's findings that she has a severe substance-

abuse disorder and J.W. cannot be returned to the mother's care. The mother's failure to argue subsection (*l*) waives any claim of error related to that ground. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996). ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal."). We affirm the statutory ground for termination of the mother's parental rights under Iowa Code section 232.116(1)(*l*).

### B. Best Interests.

Even if a statutory ground for termination is met, a decision to terminate must still be in the best interests of the child. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). The juvenile court must give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The mother claims termination is not in the best interests of J.W. We disagree.

The mother's substance-abuse issues have disrupted J.W.'s life. J.W. witnessed his mother in a state of intoxication and has witnessed domestic violence. The mother's attempts to contact J.W. while intoxicated forced him to miss school. The mother's contact was so disruptive, at one point visitation was suspended and the court required the mother to contact J.W. on a monitored phone. The mother has only been able to maintain sobriety during residential treatment and in May 2017, a warrant was issued for her arrest due to several parole violations, including absconding from her latest treatment facility. *See In re C.H.*, 652 N.W.2d 144, 150 (Iowa 2002) ("A parent's failure to address his or her role in the abuse may hurt the parents' chances of regaining custody and

care of their children."); *In re T.T.*, 541 N.W.2d 552, 557 (Iowa Ct. App. 1995) ("[W]hen a parent is incapable of changing to allow the child to return home, termination is necessary."). The mother's past and recent behavior illustrates her harm on J.W. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998). Termination is in J.W.'s best interests.

### C. Permissive Factors.

The mother argues there is clear and convincing evidence that termination would be detrimental to J.W. due to the bond in the existing parent-child relationship. J.W., a child over the age of ten, objects to termination of his mother's rights if she can remain sober. However, J.W. has stated he does not want contact with his mother if she is still abusing alcohol, and the mother appears to be unable to remain sober. Iowa Code Section 232.116(3) allows the court to decline termination if termination "would be detrimental to the child at the time due to the closeness of the parent-child relationship" or "the child is over ten years of age and objects to the termination." Iowa Code § 232.116(3)(b), (c). The statutory factors are permissive, not mandatory. *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011). "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *Id.*

While the child wants to maintain a relationship with the mother, according to the GAL, the child also objected to maintaining a relationship with the mother if she cannot maintain sobriety. Moreover, the mother's bond with the child does not mitigate the harm her substance-abuse issues have caused J.W. over the years. *See D.W.*, 791 N.W.2d at 709 ("Although it is clear that [the mother] loves

her son, our consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the mother's] inability to provide for [the child's] developing needs."). The mother has not progressed in maintaining sobriety throughput the proceedings, and J.W. is in need of a permanent home. *See In re C.B.,* 611 N.W.2d 489, 495 (Iowa 2000) ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency."); *see also In re J.E.,* 723 N.W.2d 795, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and the "need for a permanent home"). Termination of the mother's parental rights is in J.W.'s best interests.

## IV. Conclusion.

The State proved the statutory grounds for termination under Iowa Code section 232.116(1)(*l*), as the mother waived her claim of error on that ground. Termination is also in J.W.'s best interests, and we decline to apply the permissive factors under section 232.116(3).

**AFFIRMED.**